**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW HAMPSHIRE**

NICHOLAS GERARD VARGA

v. Civil No. 24-cv-130-LM-TSM

MIKE WHITE, ET AL.

**REPORT AND RECOMMENDATION**

Self-represented plaintiff, Nicholas Varga,[1] brings copyright infringement claims, pursuant to 17 U.S.C. § 501, against individuals and companies involved in writing, producing, and distributing the animated movie Migration, which Varga alleges violates his copyright on an unpublished screenplay that he wrote, titled Mine! Finding Disney (the "Screenplay"). Doc. No. 42. Defendants Mike White, Chris Meledandri, Illumination Entertainment, and NBCUniversal Media, LLC move to dismiss plaintiff's claims against them.[2] In support, they contend that personal jurisdiction is lacking as to Mike White and that Varga did not allege facts to state a claim of copyright infringement. Varga objected (Doc. No. 45) and moved for leave to file an appendix in support of his objection to the motion to dismiss (Doc. No. 44). The motion to dismiss was referred to the undersigned for a report and recommendation. See LR 72.1. For the following reasons, the district judge should grant defendants' motion to dismiss.

---

[1] Varga proceeds pro se. See LR 83.6(b).

[2] Defendants initially moved to dismiss when Varga failed to file a consolidated complaint within the time allowed by the court. Doc. No. 34. Varga then filed the consolidated complaint (Doc. No. 42), and defendants moved to dismiss that complaint (Doc. No. 43). The court deems the first motion to dismiss (Doc. No. 34) to be automatically denied without prejudice. LR 15.1(c). For that reason, the court addresses only the second motion to dismiss (Doc. No. 43) in this report and recommendation.

## BACKGROUND[3]

Varga alleges that he wrote the screenplay for Mine! Finding Disney in 2015 in New Hampshire. Doc. No. 6 at pgs. 1-2, & 5; Doc. No. 16 at pg. 2; Doc. No. 42 at pg. 5. He alleges that he submitted the Screenplay to various script consultation businesses for review. Doc. No. 42 at pg. 9. He refers to the businesses as the "Serial Infringement Script Consultation businesses." Id. at pg. 7.

Varga alleges that Mike White wrote the screenplay for Migration. Id. at pgs. 5-6. He alleges that Chris Meledandri produced Migration and that defendants Illumination Entertainment and NBCUniversal were involved in the production and distribution of Migration.[4] Id. at pg. 16. He further alleges that defendants copied his Screenplay without his consent or knowledge and without paying him. Id. at pg. 15.

Varga filed his first lawsuit in this court on May 9, 2024, alleging copyright infringement against Mike White, Illumination Animation, Benjamin Renner, and Chris Meledandri. Doc. No. 1. He then filed an amended complaint on August 12, 2024, in which he omitted defendant Renner and added Universal as a defendant. Doc. No. 6 at pg. 1. He alleged that he owned United States Copyright Registration No. Pau004225541 on his Screenplay. Id. at pg. 5. Copies of the registration documentation submitted by defendants show that the effective date of the registration

[3] "An amended complaint, once filed, normally supersedes the antecedent complaint. Thereafter, the earlier complaint is a dead letter and no longer performs any function in the case." ConnectU LLC v. Zuckerberg, 522 F.3d 82, 91 (1st Cir. 2008). In this case, however, the court will consider all of Varga's complaints (Doc. Nos. 1, 6, 16, and 42) to provide a complete background because of his pro se status and to avoid any omission or oversight due to consolidation. See, e.g., Tomas v. Buckley, No. 19-CV-12079-ADB, 2020 WL 2616304, at *1 (D. Mass. May 22, 2020).

[4] Chris Meledandri is the CEO of Illumination. Doc. No. 34-1 at pg. 1.

was June 3, 2024, and the registration decision date was June 4, 2024.[5] Doc. No. 34-3. Varga filed three other lawsuits in this court alleging copyright infringement, using the same complaint that he filed in this case as the amended complaint (Doc. No. 6): Varga v. NBC Universal, 24-cv-278-JL-AJ (filed Sept. 9, 2024); Varga v. Universal Pictures, 24-cv-279-SE-TSM (filed Sept. 9, 2024); and Varga v. Universal Pictures and Illumination Entertainment, 24-cv-280-LM-AJ (filed Sept. 9, 2024).

After filing the other suits, Varga filed a supplemental complaint in this case on September 26, 2024, naming Illumination Entertainment, Mike White, and Chris Meledandri as defendants. Doc. No. 16. He alleged that defendants infringed his copyright on Mine! Finding Disney because defendants used his basic storyline that birds get lost on a journey, meet a character of prey, and then meet a friend who leads them to a party at the end of the journey. Doc. No. 6 at ¶¶ 21-22; Doc. No. 16 at pgs. 3-4. Varga's Screenplay story is about gulls flying from New England to Florida to find a party, while the story of Migration is about ducks flying from New England to Jamaica to find a party. Id. Varga alleges that defendants temporarily infringed his copyrighted catchphrase, "I'm trying to find the party poppin off in Florida at Disney," by using the catchphrase in Migration, "I'm trying to find the party poppin off in Jamaica," but later deleted that line. Id. at pg. 1.

On October 8, 2024, the court consolidated Varga's cases numbered 24-cv-279 and 24-cv-280 with this case, 24-cv-130, as the main case, and statistically closed the fourth case, Varga v. NBC Universal, 24-cv-278. Doc. No. 5. The court ordered Varga to file a consolidated complaint to include all of his claims from the consolidated cases. Id. After some delay, Varga filed the

[5] The court may consider the copyright registration documents because the parties do not dispute their authenticity and Varga cites the copyright registration in the complaint (Doc. No. 42 at pg. 1).

consolidated complaint on December 10, 2024. Doc. No. 42. In the main part of the consolidated complaint, Varga names Mike White, Chris Meledandri, Illumination Entertainment, NBC Universal LLC, and Scot Lawrie as defendants.[6] Id. at pgs. 2 & 11. In what appears to be an addendum to the consolidated complaint, titled "CONTINUED FROM CONSOLIDATION COMPLAINT," Varga provides additional allegations pertaining to Scot Lawrie and lists new defendants: a script consultation business, Coverfly; Magdelena Waz, whom he identifies as a representative of Coverfly; and ten other script consultation businesses. Id. at pgs. 21-27.

The court held a hearing on defendants' motions to dismiss on July 7, 2025.[7] Counsel for defendants argued that Varga failed to allege facts to show personal jurisdiction over Mike White and also did not allege sufficient facts to show copyright infringement based on access to his Screenplay and substantial similarity between his Screenplay and Migration. Varga argued that he sufficiently alleged personal jurisdiction and copyright infringement.

## DISCUSSION

### I. Motion to Dismiss Claims against Mike White for Lack of Personal Jurisdiction

#### A. Standard of Review

When, as here, a defendant challenges personal jurisdiction at the beginning of a case under Federal Rule of Civil Procedure 12(b)(2), before discovery or a hearing, the prima facie standard

---

[6] Varga alleges that Scot Lawrie was CEO and/or owner of one or more of the script consultation businesses. Doc. No. 42 at pg. 7. Lawrie is not one of the defendants who filed the motion to dismiss addressed here.

[7] Defendants White, Meledandri, Illumination, and NBCUniversal filed the motion to dismiss that is addressed in this order. Defendant Lawrie filed a motion to dismiss that is addressed in a separate order.

applies.[8] Rosenthal v. Bloomingdales.com, LLC, 101 F.4th 90, 94 (1st Cir. 2024). Under the prima facie standard, "an inquiring court must ask whether the plaintiff has proffered evidence which, taken at face value, suffices to show all facts essential to personal jurisdiction." Id. (internal quotation marks omitted). That is, "the plaintiff must go beyond the pleadings and make affirmative proof." Id. (internal quotation marks omitted).

The court has subject matter jurisdiction in this case based on a federal question: Varga's copyright infringement claims under 17 U.S.C. § 501. See 28 U.S.C. § 1331. For federal question cases, the due process clause of the Fifth Amendment requires that a defendant have adequate contacts with the United States as a whole to support personal jurisdiction. Secs. & Exch. Comm'n v. Gastauer, 93 F.4th 1, 8 (1st Cir. 2024). Unless a federal statute provides for nationwide service of process, however, the plaintiff must follow the forum state's laws for service, which also govern personal jurisdiction. Lorelei Corp. v. Cnty. of Guadalupe, 940 F.2d 717, 719-20 (1st Cir. 1991). Here, because the Copyright Act does not provide for nationwide service of process, the court must determine whether New Hampshire's long-arm statute authorizes personal jurisdiction under the circumstances presented and whether personal jurisdiction is consistent with due process under the same analysis that is used in diversity cases. Dudnikov v. Chalk & Vermilion Fine Arts, Inc., 514 F.3d 1063, 1070 (10th Cir. 2008); Jorge v. Adler, No. 3:22-CV-30075-KAR, 2024 WL 111997, at *3 (D. Mass. Jan. 10, 2024).

New Hampshire's long-arm statue, NH RSA 510:4, I, extends personal jurisdiction to the full extent allowed by due process. Cappello v. Restaurant Depot, LLC, 89 F.4th 238, 243 (1st Cir. 2023). To satisfy due process, a defendant must "'have certain minimum contacts with the forum

[8] The court denied Varga's motion for jurisdictional discovery. Doc. No. 73. Although the court held a hearing on the motion to dismiss, the parties did not introduce evidence pertaining to personal jurisdiction that would implicate a different standard of review.

state such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" Id. at 244 (quoting Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945)) (cleaned up). A defendant's contacts with the forum state can establish either general or specific personal jurisdiction. Id. "A state holds general jurisdiction over a defendant when the defendant maintains contacts that are 'so continuous and systematic as to render [the defendant] essentially at home in the forum State.'" Rosenthal, 101 F.4th at 95 (quoting Goodyear Dunlop Tires Operations, S.A. v. Brown, 564 U.S. 915, 919 (2011)). To demonstrate specific jurisdiction, the plaintiff must satisfy three criteria: relatedness, purposeful availment, and reasonableness. Id. The plaintiff must demonstrate personal jurisdiction as to each defendant separately. Rush v. Savchuk, 444 U.S. 320, 332 (1980); Alianza Ams. v. DeSantis, 727 F. Supp. 3d 9, 34 (D. Mass. 2024).

B. Analysis

Varga does not expressly invoke either general or specific personal jurisdiction over White. See Doc. No. 42 at pgs. 4-5. His allegations in the consolidated complaint and prior complaints and his statements and arguments in his objection to defendants' motion that may relate to the issue of personal jurisdiction over White primarily focus on his claim that defendants collectively, along with a group of script consultation businesses, stole his Screenplay.[9] He contends that

[9] Varga alleges in the consolidated complaint that his copyrighted Screenplay was stolen from New Hampshire "where Mike White was in proximity of the several people involved in the Business Vicinity Created Relationship unto that of which, engage in Serial Infringement and infringement occurred and is still to this day being used to occur." Doc. No. 42 at pg. 5. He states the following in his objection to the motion to dismiss on the subject of personal jurisdiction:

> Mike White is considered an employee aside from that, an individual himself with-in the Business Vicinity Created Relationship of the Serial Infringement business that was owned by Scot Lawrie whom lied, who then caused himself the action of jurisdictional matters, then submitted himself to the state of New Hampshire when associated with the business in which stole the Copyrighted

personal jurisdiction exists over White because Varga wrote the Screenplay for Mine! Finding Disney in New Hampshire and defendants stole the Screenplay from him in New Hampshire.

Personal jurisdiction as to each defendant depends on that particular defendant's actions in or aimed at the forum state. See, e.g., Ford Motor Co. v. Montana Eighth Judicial Distr. Court, 592 U.S. 351, 358-60 (2021); Rosenthal, 101 F.4th at 95; Gastauer, 93 F.4th at 9. Notably absent from Varga's allegations and his statements in his objection are facts (who, what, when, where, and how) to show that White had any contact with New Hampshire, much less contact that would support either general or specific personal jurisdiction. White cites his own affidavit to show that

---

> Work from a resident of the state of New Hampshire and as a form of Beneficial Infringement, was pursued to collect monies from a fraudulent Copyright creation.
>
> . . . .
>
> If you as well notice, upon the unethical Motion to Dismiss only Mike Whites' jurisdiction is spoken of and or tested now, where Chris Meledandri, Illumination Entertainment, and Universal is all well-known and too understood, in which does have multiple points of personal Jurisdiction, and jurisdiction, and venue to this state in the state of New Hampshire.
>
> 2. In response to the Defendant's counsel's Motion to Dismiss clause #2. As an initial matter, this court does not lack any form of jurisdiction in which if Mike White claim to be Original Writer, access to the Plaintiff's Copyrighted Work was read and stolen from, from Scot Lawrie's Infringement business. Stolen directly from the state of New Hampshire.
>
> A point of "Purposeful Availment" is conclusive when a business sells the infringed product in retail stores and exhibitors that are conducted in this state where the Plaintiff reside. Where you benefitted from the return of investment and monies that came from this state and the surrounding states if we call it New England. Where you sold copies of the DVD on the same shelves at a Target where the Plaintiff works part-time at and upon the movie theaters that are in this state. Where it was also commercialized on television where Universal owns distribution and satellite companies in this state. And then, because the infringers knew they were doing business with the Plaintiff, knew that the project was the Plaintiffs, gave feedback multiple times to the Plaintiff about his Copyright, spoke with the Plaintiff about his copyright, and knew the Copyright was owned by the Plaintiff, sets the Defendants up for Contributory Infringement.

Doc. No. 45 at pgs. 1-3.

he has had no contact with New Hampshire. He states that he did not participate in the distribution of the film, Migration, in New Hampshire. Doc. No. 34-5 at ¶ 3. He also states that he does not own property in New Hampshire, does not reside here, and has no office here. Id. at ¶¶ 4, 5, & 6. White states that his only contacts with New Hampshire are his attorneys representing him in this case. Id. at ¶ 8.

Varga relies exclusively on speculation and conjecture about White's possible involvement in receiving and copying his Screenplay to support personal jurisdiction. Although he suggests that White is or was an employee of a business that infringed his copyright, Varga does not allege facts to show that White, himself, had any contact at all with New Hampshire that would support personal jurisdiction. Varga has not carried his burden to show that personal jurisdiction exists over White in New Hampshire. For that reason, the district judge should dismiss Varga's claims against White for lack of personal jurisdiction.

## II. Motion to Dismiss the Copyright Claims

Defendants Mike White, Chris Meledandri, Illumination Entertainment, and NBCUniversal Media, LLC move to dismiss Varga's copyright infringement claims against them on grounds that Varga brought suit before registering his copyright and that he does not allege facts to state a claim of copyright infringement. Doc. No. 43 at pgs. 7-13. Varga objects to dismissal of his copyright infringement claims, although he does not separate the issue of personal jurisdiction from dismissal on the merits. Doc. No. 45. For the reasons that follow, the district judge should dismiss Varga's copyright infringement claims against defendants White, Meledandri, Illumination, and NBCUniversal.

A. Standard of Review

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the "complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Thornton v. Ipsen Biopharmaceuticals, Inc., 126 F.4th 76, 80 (1st Cir. 2025) (internal quotation marks omitted). In making that determination, the court "must accept as true all well-pleaded facts indulging all reasonable inferences in [plaintiff's] favor." Wadsworth v. Nguyen, 129 F.4th 38, 61 (1st Cir. 2025) (internal quotation marks omitted). In addition, pro se pleadings "are subject to less stringent standards than formal pleadings drafted by lawyers," Universitas Educ., LLC v. Granderson, 98 F.4th 357, 379 (1st Cir. 2024) (internal quotation marks omitted), and are to be construed liberally in favor of the pro se plaintiff, Ayala Serrano v. Lebron Gonzalez, 909 F.2d 8, 15 (1st Cir. 1990).

Ordinarily, the court considers only the facts in the complaint and its exhibits when deciding a motion under Rule 12(b)(6), and to consider additional materials and matters the court would convert the motion to one for summary judgment. Fed. R. Civ. P. 12(d). Certain exceptions to that rule exist, however, such as when the authenticity of documents is not disputed and when the court may take judicial notice of certain documents. Douglas v. Hirshon, 63 F.4th 49, 57 (1st Cir. 2023). The court may also consider documents that are incorporated by reference into the complaint. Grajales v. P.R. Ports Auth., 682 F.3d 40, 44 (1st Cir. 2012).

Here, both Varga and defendants rely on documents that may be extrinsic to the complaint. The parties appear to agree that the court may take judicial notice of the documents pertaining to the registration of Varga's copyright on his Screenplay for Mine! Finding Disney. See Doc. Nos. 34-3 & 34-4. Varga makes allegations about the copyright in the consolidated complaint and in his

prior complaints and, for that reason, the copyright registration is deemed to be incorporated into the complaint.

Most of the exhibits that Varga included in his appendix (Doc. No. 44-1) to his objection are not authenticated or even properly identified and do not clearly fall into any exception that would allow the court to consider them for purposes of defendants' motion to dismiss. Exhibits 1-4 and 7 appear to be screen shots of Varga's online research or conversations and emails, which are not properly identified or authenticated, and those exhibits are not exceptions to the general rule against extrinsic materials. Doc. No. 44-1 at pgs. 3-13 & 21-28. Exhibit 5 is a copy of an untitled document that Varga lists in the table of contents as: "Submissions of Copyright to the Serial Infringement business and highlighted parts that intertwine the Nantucket Film Festival and Screencraft expression." Id. at pgs. 2, 14-16. Varga provides no grounds to except Exhibit 5 from the general rule. Exhibit 6 is listed in Varga's table of contents as "Nantucket Film Festival highlighted response information," but Varga does not provide sufficient identification or authentication to consider that document. Id. at pg. 2. Accordingly, the court will not consider Exhibits 1 through 7 for purposes of the motion to dismiss.

Exhibits 8 and 9 appear to be copies of parts of Varga's Screenplay, which is the subject of Varga's complaint. Defendants object to consideration of Exhibits 8 and 9 on the ground that they "serve no purpose and [would] be an unnecessary burden to Defendants and the Court," but defendants provide no developed argument to support that objection. Doc. No. 46 at pg. 9; see Quintana-Dieppa v. Dep't of Army, 130 F.4th 1, 12 n.12 (1st Cir. 2025). The court deems these segments of the Screenplay to be incorporated into the complaint by reference and will consider Exhibits 8 and 9 to the extent that may be appropriate in the context of the motion to dismiss and Varga's objection.

B. Analysis

"To establish copyright infringement, the plaintiff must prove two elements: (1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." Perea v. Ed. Cultural, Inc., 13 F.4th 43, 52 (1st Cir. 2021) (internal quotation marks omitted). Defendants Mike White, Chris Meledandri, Illumination Entertainment, and NBCUniversal Media, LLC move to dismiss Varga's copyright infringement claims against them on the grounds that he did not register his copyright before he brought suit and that he does not allege facts to support a copyright infringement claim. Defendants do not challenge the validity of Varga's copyright registration. Varga objects, arguing that dismissal is not appropriate based on the registration date and that he alleges infringement.

*i. Registration of the copyright*

Under 17 U.S.C. § 411(a), a copyright owner cannot bring suit for infringement until registration "has been made." Registration has been made when the Copyright Office grants registration by issuing a certificate. Fourth Est. Pub. Benefit Corp. v. Wall-Street.com, LLC, 586 U.S. 296, 302 (2019). Copyright registration "is akin to an administrative exhaustion requirement," id. at 301, but the registration prerequisite is not jurisdictional, Alicea v. Machete Music, 744 F.3d 773, 778 (1st Cir. 2014). In an appropriate case, a plaintiff may be allowed to supplement the complaint to reflect a copyright registration obtained after the original complaint was filed.[10] See Cortés-Ramos v. Martin-Morales, 956 F.3d 36, 43 (1st Cir. 2020) (suggesting that supplementation

[10] Other courts have held that when suit is filed before the plaintiff obtains copyright registration the plaintiff should not be allowed to amend to add a subsequently obtained registration. See, e.g., Mayers v. Racino, No. 23-CV-5183 (MKV), 2024 WL 3729020, at *4 (S.D.N.Y. Aug. 7, 2024); Nabeel v. Meta Platforms, Inc., No. 2:23-CV-07452-HDV-PVCX, 2023 WL 9419151, at *1 n.2 (C.D. Cal. Nov. 30, 2023); Brown v. New Era Cap Co., Inc., No. 5:20-CV-139-DAE, 2020 WL 6153010, at *3 (W.D. Tex. Mar. 25, 2020).

under Federal Rule of Civil Procedure 15(d) could satisfy the § 411(a) prerequisite); see also Neu Prods. Inc. v. Outside Interactive, Inc., No. 23 CIV. 4125 (LAK) (GWG), 2024 WL 1161498, at *7 (S.D.N.Y. Mar. 19, 2024), report and recommendation adopted, No. 23-CV-4125 (LAK), 2024 WL 2992351 (S.D.N.Y. June 13, 2024) (allowing amendment to show registration to avoid a meaningless formality of refiling the claim).

The circumstances here support concluding that Varga satisfied § 411(a). Although he filed the first lawsuit before he obtained copyright registration, he later filed a supplemental complaint with the registration information, and he then filed three other copyright infringement lawsuits. The court consolidated the suits into this case. A technical application of § 411(a) here, based on only the original complaint filed in case number 24-cv-130 before copyright registration of Varga's Screenplay, would elevate form over substance and impose meaningless obstacles. The district court should not dismiss the case based on a technical failure to comply with § 411(a), in case number 24-cv-130, particularly in light of the consolidation of the cases.

*ii. Infringement*

Apart from the timing of registration, defendants do not challenge Varga's ownership of a valid copyright. For purposes of the second element of copyright infringement, copying, the plaintiff "has the ultimate burden to prove that (1) the defendant actually copied the work as a factual matter and (2) the copying rendered the infringing and copyrighted works substantially similar." Perea, 13 F.4th at 55. When direct evidence of copying is absent, a plaintiff may establish copying indirectly by showing that defendants had access to the copyrighted work and that the works are sufficiently similar to support an inference of actual copying. T-Peg, Inc. v. Vt. Timber Works, Inc., 459 F.3d 97, 111 (1st Cir. 2006). If the plaintiff establishes an inference of actual copying, then he also must show substantial similarity between the copyrighted work and the

infringing work so that "the later work represented a wrongful appropriation of expression." Id. at 112 (internal quotation marks omitted). "[A]t the pleading stage, the plaintiff need not actually prove the elements of his claim but rather need only sufficiently allege facts that show the claim is plausible on its face." Cortés-Ramos, 956 F.3d at 41.

Defendants contend that Varga has not alleged sufficient facts in the consolidated complaint to meet his burden of alleging copyright infringement. The consolidated complaint is disjointed in presentation, lacks coherent factual allegations, and, for those reasons, is difficult to follow. Varga's prior complaints provide some additional material allegations, which the court considered. See Doc. Nos. 1, 6, & 16. Even construing Varga's allegations broadly, as is required in consideration of both his pro se status and under the standard for opposing a motion to dismiss, see Erickson v. Pardus, 551 U.S. 89, 94 (2007), the district judge should conclude that Varga has not alleged an actionable claim of copyright infringement and grant the motion to dismiss.

Actionable Copying - Access

Varga does not allege facts to show direct copying by any of the defendants. For that reason, the court evaluates his claim under the indirect evidence standard, which requires factual allegations that show defendants had access to Varga's Screenplay and that there is sufficient similarity in the works to support a reasonable inference of actual copying. T-Peg, 459 F.3d at 111. Because probative similarity, to show copying, is sufficiently analogous to similarity for purposes of copyright infringement, those elements merge and are addressed together in the next section. See id. at 112.

To demonstrate that defendants had access to the work, a plaintiff must allege facts to show "a reasonable finder of fact could infer that the defendant had a reasonable opportunity to copy his or her work." Grubb v. KMS Patriots, L.P., 88 F.3d 1, 3 (1st Cir. 1996). Access may be inferred

when "a third party with whom both the plaintiff and defendant were dealing had possession of plaintiff's work and the plaintiff's and defendant's dealings took place concurrently." T-Peg, 459 F.3d at 111 (internal quotation marks omitted). A plaintiff must allege facts, however, that at least "raise a reasonable possibility" that defendants "viewed his work—not merely a bare possibility." Woodland v. Hill, 136 F.4th 1199, 1207 (9th Cir. 2025) (internal quotation marks omitted). The court cannot draw "an inference of access based upon speculation and conjecture alone." Grubb, 88 F.3d at 3 (internal quotation marks omitted).

Varga alleges that he wrote his Screenplay in 2015, and beginning in 2017, he submitted it to script consultation businesses for feedback. Doc. No. 42 at pgs. 3 & 10. He alleges that defendant Scot Lawrie owned one or more of the script consultation businesses. Id. at pgs. 7, 12, 21, & 23. He alleges that he had a recorded video session with a representative from the script consultation business, Coverfly, on November 3, 2021, who told him that Coverfly sends the scripts it receives out for review. Id. at pgs. 22-24. Based on those allegations, construed in Varga's favor, Varga plausibly alleges that he submitted his Screenplay for Mine! Finding Disney to many script consultation businesses and that at least Coverfly submitted the scripts it received to its employees for feedback.

What is missing, however, are plausible factual allegations that defendants White, Meledandri, Illumination, or NBCUniversal had access to Varga's Screenplay through those businesses or otherwise. Instead, Varga relies on his own suspicions, conjecture, theories, and speculation about what might have happened. By way of example, Varga alleges the following to show that defendants had access to his Screenplay:

> Plaintiff submitted the Copyrighted Work (the screenplay titled Mine! Finding Disney[)] several times over the course of more than four years where the employees of the Serial Infringement Script Consultation business were paid to read the Copyrighted Work in which they opened it and read it. Then Plaintiff paid for

> feedback, in which the employees responded by giving feedback, proving they read it, opened it, and had clear access. In which the Copyrighted Work was submitted from New Hampshire into the data base of the Serial Infringement Script Consultation business. Where they commercialized the proximity of the producer Chris Meledandri, several of his writers, and his personnel and employees. In which they also commercialized NBC Universal LLC and their personnel and employees. Several of them were simply paid, to read, and judge the material, and open it, giving them access. The representative during the video session also explained that they had opened the Copyrighted Work Mine! Finding Disney. This infringement was a classic tale of when they decide to tell you your work and business is deniable but they are stealing everything you create. Several of the employees over the course of four years read and gave feedback of the copyrighted material several times since late 2017.

Id. at pgs. 9-10. Later in the consolidated complaint, Varga alleges the following to establish defendants' infringing conduct through an undefined "Business Vicinity Created Relationship" between defendants and the "Serial Infringement Script Consultation businesses":

> On information and belief, Defendants are engaged in using a business and its website to steal copyright material and other ideas and pieces of art and material works AKA the screenplay and other ideas from screenplays. They have a Business Vicinity Created Relationship with the employees of Screencraft and Coverfly and other Hollywood Elite individuals in which some employees have been engaged in serial infringement of peoples [sic] works. The script consultation businesses allow for non-applicated individuals to roam and possess a copyright without a trace and or on a guest list that is clearly erasable if they wanted to lose a trace. The representative admitted on recorded video session that when a person submits information to their platform, that it gets sent out and there is not an email trace. It is concluded to them that readers are not licensed to handle copyright allowing for any producer or even another writer to handle your screenplay in the fact that unlicensed individuals freely roaming upon an open data base with no proper just for trace of entries, are allowed in and out using the business's website to obtain a copyright.

Id. at pg. 13. During the hearing, Varga argued generally that unidentified personnel from the defendant businesses were paid to open and read scripts submitted to the script consultation businesses and that unidentified online forums show that the defendants and the script consultation businesses were in the same "vicinity." He also stated that unidentified employees of the defendant

businesses served as judges at a Nantucket Flim Festival when he submitted his Screenplay for evaluation.[11]

Construing Varga's allegations liberally, he seems to allege that the script consultation businesses to whom he submitted his Screenplay for Mine! Finding Disney had their employees read his work, but they do not protect copyrighted material submitted to them and do not keep records of who may have access to the submitted works. From those circumstances, he speculates that defendants through their employees or personnel, could have had relationships with those businesses and could have obtained his Screenplay without any record of having done so. Varga does not allege facts, however, that show or even plausibly suggest defendants actually did have contact with any of the script consultation businesses, that his Screenplay was made available to them, or that any of the defendants or their employees read his Screenplay or were even aware of his Screenplay before Migration was written and produced. As noted above, a bare possibility that defendants might have seen his Screenplay before writing and producing Migration is not enough to show access. See, e.g., Kenney v. Warner Bros. Ent. Inc., 984 F. Supp. 2d 9, 12-13 (D. Mass. 2013) (citing examples showing that conclusory allegations and speculation are not enough to show access).

Varga has not alleged facts to provide a plausible basis for the element of access. Therefore, the district judge should grant defendants' motion to dismiss the infringement claim against them on the access element. In the absence of access, Varga cannot show infringement. See Latin Am. Music Co. Inc. v. Media Power Grp., Inc., 705 F.3d 34, 38 (1st Cir. 2013) ("To establish copyright

[11] Exhibit 5 in the appendix includes a document with the heading Nantucket Film Festival that appears to be a review of Varga's script and is dated January 5, 2020. That document, however, does not identify the judges who reviewed Varga's script or demonstrate any relationship with the defendants.

infringement, the plaintiff must prove two elements: (1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." (internal quotation marks omitted)). The court nevertheless addresses substantial similarity for purposes of completeness.

Actionable Copying - Substantial similarity

Actionable copying must be "sufficiently extensive that it renders the infringing and copyrighted works substantially similar." Harney v. Sony Pictures Television, Inc., 704 F.3d 173, 178 (1st Cir. 2013). For substantial similarity, the defendants' copying of protectable aspects of the plaintiff's work must make "the works so similar that the later work represented a wrongful appropriation of expression." T-Peg, 459 F.3d at 112. "Substantial similarity between the copyrighted work and the allegedly infringing work is assessed by comparing the protected elements of the plaintiff's work as a whole against the defendant's work." Airframe Sys., Inc. v. L-3 Comms. Corp., 658 F.3d 100, 106 (1st Cir. 2011) (internal quotation marks omitted). The plaintiff bears the burden to prove substantial similarity. T-Peg, 459 F.3d at 18.

Importantly, to assess substantial similarity, the court compares only protectable expression in the copyrighted work and the allegedly infringing work.[12] See, e.g., Harney, 704 F.3d at 178. "Copyright protection 'extend[s] only to those components of a work that are original to the author,' and a work that is sufficiently 'original' to be copyrighted may nonetheless contain

[12] The court notes that decisions issued by the First Circuit Court of Appeals on copyright infringement use both "protectable expression" and "protectible expression." Cf. Harney, 704 F.3d at 179 (protectible), with Airframe, 658 F.3d at 106 (protectable). To avoid confusion, the court will use "protectable."

unoriginal elements." Id. (quoting Feist Publ'ns, Inc. v. Rural Tel. Serv. Co., 499 U.S. 340, 348 (1991)). "[A]ssessing substantial similarity requires close consideration of which aspects of the plaintiff's work are protect[able] and whether the defendant's copying substantially appropriated those protected elements." Id. at 179.

Generally, dissecting the protectable elements of the two works is a legal question for the court. Id. Once the protectable expression dissection is done, "the determination of substantial similarly is ordinarily assigned to the factfinder." Id. "The fact finder gauges this element by applying the 'ordinary observer' test, under which substantial similarity is found if a reasonable, ordinary observer, upon examination of the two works, would conclude that the defendant unlawfully appropriated the plaintiff's protectable expression." Airframe, 658 F.3d at 106.

In his objection to defendants' motion to dismiss, Varga contends that the entire story of his Screenplay is protectable.[13] Varga acknowledged in his supplemental complaint, however, that his story in Mine! Finding Disney was not original because he based the Screenplay on the stories

---

[13] Rather than providing the necessary analysis of protectable elements and substantial similarity in his objection to defendants' motion, which is his burden, Varga states:

> The screenplay needs to be explained in front of the jury and magistrate so everyone is not left aloof enduring its analyzation. The screenplay has two stories in one, which can be explained. The story inside of the story is the [initial compound] which creates the movie itself which was taken out of the entire 122-page copyright. Although the original document was 129 pages. A performance by the Plaintiff during an Oral Argument over it will be very fun and exciting.

Doc. No. 45 at pgs. 4-5.

in the movies Finding Nemo and Finding Dory, which he attributes to Pixar.[14] Therefore, Varga cannot claim the entire story is protectable expression.

Varga may contend that the initial "log line" for his Screenplay, "Goofy seagulls from New England go on an adventure to find the party poppin off in Florida at Disney," is protectable expression. Doc. No. 16 at pg. 1. He alleges that the log line for Migration during its initial release was "A Family of ducks from a New England Pond go on an adventure to find the party poppin off in Jamaica." Id. He alleges that after he contacted some of the defendants, they had their publicist delete the original log line for Migration. He also alleges that Migration used the catchphrase, "I'm trying to find the party poppin off in Jamaica," to show the reason for the ducks' adventure, just as the gulls in his Screenplay said, "I'm trying to find the party poppin off in Florida at Disney." Doc. No. 16 at pg. 3. He further alleges that defendants deleted the catchphrase from Migration, but the deletion is apparent because the animation is not properly synchronized to the script at those points. Id.

It is difficult if not impossible to dissect the protectable expression in Mine! Finding Disney and Migration, if any, without authenticated copies of the screenplays/scripts. In the absence of the scripts, which Varga did not provide, Varga cannot carry his burden to demonstrate substantial similarity based on the "log lines" or "catchphrases" in the two scripts.[15] Varga's assertion of

---

[14] There, Varga stated:

> The script [of Mine! Finding Disney] is based off of the widely known movies "Finding Nemo" and "Finding Dori" [sic]. Through infringing the Plaintiff, the companies by accident stole in theory, Pixar's intellectual property compound based on these movies. Hence the reason of "finding the party". Although luckily for the Plaintiff, Pixar does not in fact own the right to "finding" nor the right to finding in the particular "birds ascension" the story is about.

Doc. No. 16 at pg. 4.

protection over the entire story is meritless, based on his own acknowledgement that he copied the story from well-known movies. See Harney, 704 F.3d at 178 (internal quotation marks omitted) (explaining that "it is permissible to mimic the non-copyrightable elements of a copyrighted work. Copyright protection extends only to those components of a work that are original to the author, and a work that is sufficiently original to be copyrighted may nonetheless contain unoriginal elements"). His acknowledged copying further undermines any likelihood of copyright infringement based on the similarity of log lines or catchphrases. As such, Varga has not carried his burden to sufficiently allege substantial similarity between protectable expression in the two works.

Varga's failure to allege substantial similarity further supports the recommendation that the district judge grant defendants' motion to dismiss.

## CONCLUSION

For the foregoing reasons, the district judge should grant defendants' motion to dismiss (Doc. No. 43). The district judge should dismiss the claims against defendant Mike White for lack of personal jurisdiction and dismiss the claims against defendants Chris Meledandri, Illumination Entertainment, and NBCUniversal Media on the merits. Any objections to this Report and Recommendation must be filed within fourteen (14) days of receipt of this notice. The fourteen-day period may be extended upon motion. Failure to file any objection within the specified time waives the right to appeal the district court's Order. See Santos-Santos v. Torres-Centeno, 842 F.3d 163, 168 (1st Cir. 2016). Only those issues raised in the objection(s) to this Report and

[15] This is particularly true because Varga alleges that defendants deleted or hid the similar log lines and catchphrases in Migration because of "paranoia of knowingly stealing from [him]." Id. at pg. 1.

Recommendation "are subject to review in the district court" and any issues "not preserved by such objection are precluded on appeal." Sch. Union No. 37 v. United Nat'l Ins. Co., 617 F.3d 554, 564 (1st Cir. 2010) (quoting Keating v. Sec'y of Health & Hum. Servs., 848 F.2d 271, 275 (1st Cir. 1988)).

Defendants' first motion to dismiss (Doc. No. 34) is automatically denied without prejudice. LR 15.1(c).

Talesha L. Saint-Marc
United States Magistrate Judge

July 14 , 2025

cc: Nicholas Gerard Varga, pro se.
Counsel of record.